UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MIGHICAN
SOUTHERN DIVISION

PERCY HERRON,

        Plaintiff,

v.                                                                                      Case No:  17-_____
                                                                                        HON.

PETERSON AMERICAN CORPORATION,
d/b/a
PETERSON SPRING COMPANY

        Defendant.

THE CORTESE LAW FIRM, PLC
Nanette L. Cortese (P43049)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, Michigan 48025
(248) 593-6933/fax (248) 593-7933
ncortese@thecorteselawfirm.com

## PLAINTIFF PERCY HERRON'S COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, Percy Herron, by and through his attorneys The Cortese Law Firm, PLC, and for this his Complaint and Jury Demand states as follows:

### I.      JURISDICTIONAL AVERMENTS

1.  Plaintiff Percy Herron is a resident of Wayne County, Michigan.

2.  Plaintiff Percy Herron was employed by Peterson Spring Company, ("Peterson Spring"), which has a principal place of business in Oakland County, Michigan.

3.  Peterson Spring is an assumed name of Peterson American Corporation, which is a Domestic Profit Corporation registered in the State of Michigan.

4.  Plaintiff has brought this action within ninety (90) days after receiving a Right to Sue letter from the EEOC.

1

5. Plaintiff has brought this action within 3 years of the adverse employment actions this Complaint is regarding.

6. This action arises under Federal Law and jurisdiction is conferred upon this Court under 28 U.S.C. 1331 and this Honorable Court has subject matter jurisdiction since this case presents a federal question.

7. The events giving rise to this Cause of Action took place in Oakland County, Michigan.

8. Venue is appropriate in this matter.

## II.     FACTUAL AVERMENTS

9. Plaintiff reincorporates and re-alleges the above paragraphs as if fully stated herein.

10. Plaintiff Percy Herron was employed as a Coiler Operator by Peterson Spring at a facility located in Madison Heights, Michigan.

11. Plaintiff Percy Herron experienced discrimination and/or harassment and/or disparate treatment based on his race, African-American, and his age.

12. Percy Herron experienced heightened scrutiny from Supervisors, when other similarly situated white employees were not subject to heightened scrutiny.

13. While employed by Peterson Spring, Plaintiff Percy Herron was subject to disparate treatment, including, but not necessarily limited to, increased scrutiny and being yelled at by Supervisor Tony Lolo, and being subject to profanity being used against him.

14. Percy Herron, while employed with Peterson Spring, was subject to increased scrutiny, and subject to blame for things which he was not responsible for, while non-African American employees who had committed serious violations of company policy, were not subject to similar scrutiny or blame.

15. On or about February 2016, Plaintiff Percy Herron was subject to his shift being switched from first to third without notice and without explanation, where other, non- African

American employees with less seniority and younger employees with less seniority did not have their shifts switched.

16. On or about June 2016, Percy Herron was denied overtime where other, non-African American employees with less seniority and younger employees with less seniority were allowed to work overtime.

17. On or about October 2016, Percy Herron requested a meeting with his supervisors' supervisors in order to address the disparate treatment he was receiving at his workplace as a result of his race and hopefully to come to a resolution.

18. During that meeting, Percy Herron was subject to accusations and disparate treatment, including but not necessarily limited to, being yelled at by Tony Lolo.

19. On or about December 1, 2016, Peterson Spring eliminated the third shift.

20. Upon elimination of the third shift, Peterson Spring found alternate positions for many of the former third-shift workers.

21. Plaintiff Percy Herron's employment was terminated at the time of this elimination, where other, non-African American employees with less seniority and younger employees with less seniority were found other shifts to work.

## COUNT I
## VIOLATION OF THE MICHIGAN CIVIL RIGHTS ACT
## BASED ON RACE

22. Plaintiff Percy Herron reincorporates and re-alleges the above paragraphs as though fully stated herein.

23. While employed with Peterson Spring, Plaintiff Percy Herron experienced conduct and/or treatment which had the effect of creating a hostile work environment based on race. There comments and/or conduct included, but were not necessarily limited to:

3

a. Being subject to increased scrutiny from Supervisor Tony Lolo, who would single out Plaintiff Percy Herron from other workers in order to belittle him or criticize his work.

b. Being subject to profanity from Supervisor Tony Lolo

c. Being subject to increased scrutiny for behavior which Plaintiff Percy Herron did not exhibit

d. Having his requests for a peaceable resolution between him and Supervisor Tony Lolo ignored and ultimately corrupted.

e. Being shifted to third shift while other, non-African American employees and employees with less seniority were not shifted to third shift

f. Having his employment terminated where other, non-African American employees and employees with less seniority were found work elsewhere.

24. While employed by Defendant, Plaintiff Percy Herron was subject to heightened scrutiny and disparate treatment based on his race, African American, including being yelled at and having profanity used against him.

25. The comments and/or conduct more fully described above were sufficiently severe and/or pervasive to have the effect of creating a hostile work environment which interfered with Plaintiff Percy Herron's work.

26. Plaintiff Percy Herron complained about racism to Defendant, even going so far as to request a meeting so that he and Supervisor Tony Lolo could work out their differences and/or come to an understating.

27. Plaintiff Percy Herron's employment was terminated under circumstances making it more plausible than not that the termination of his employment was in violation of the Michigan Civil Rights Act, including but not necessarily limited to: The fact that Percy Herron had

complained about the disparate treatment he had faced in his workplace; the finding of other work for non-African American employees and employees with less seniority; the fact that Mr. Herron was subject to increased scrutiny, while other, non-African American employees with similar or egregious infractions were not subject to similar scrutiny; and/or other employees who had not complained regarding racism, were not subject to similar scrutiny and ultimately termination.

28. As a result of the actions by Defendants in violation of the Michigan Civil Rights Act, Percy Herron sustained damages including, but not necessarily limited to, being subject to heightened scrutiny, loss of reputation, loss of back wages, loss of front wages, loss of opportunity for advancement and/or promotion, emotional distress, embarrassment, humiliation, exemplary damages, etc.

WHEREFORE Plaintiff Percy Herron respectfully requests this Honorable Court award him all damages allowed under the Michigan Civil Rights Act including, but not necessarily limited to, economic damages, loss of back pay, loss of future pay, loss of benefits, non-economic damages, damages for loss of reputation, damages for embarrassment, humiliation and/or emotional distress; consequential damages, incidental damages, exemplary damages, punitive damages, costs, interest, and attorney's fees.

## COUNT II
## VIOLATION OF TITLE VII

29. Plaintiff Percy Herron reincorporates and re-alleges the above paragraphs as though fully stated herein

30. While employed with Peterson Spring, Plaintiff Percy Herron experienced conduct and/or treatment which had the effect of creating a hostile work environment based on race. There comments and/or conduct included, but were not necessarily limited to:

5

a. Being subject to increased scrutiny from Supervisor Tony Lolo, who would single out Plaintiff Percy Herron from other workers in order to belittle him or criticize his work.

b. Being subject to profanity from Supervisor Tony Lolo

c. Being subject to increased scrutiny for behavior which Plaintiff Percy Herron did not exhibit

d. Having his requests for a peaceable resolution between him and Supervisor Tony Lolo ignored and ultimately corrupted.

e. Being shifted to third shift while other, non-African American employees and employees with less seniority were not shifted to third shift

f. Having his employment terminated where other, non-African American employees and employees with less seniority were found work elsewhere.

31. While employed by Defendant, Plaintiff Percy Herron was subject to heightened scrutiny and disparate treatment based on his race, African American, including being yelled at and having profanity used against him.

32. The comments and/or conduct more fully described above were sufficiently severe and/or pervasive to have the effect of creating a hostile work environment which interfered with Plaintiff Percy Herron's work.

33. Plaintiff Percy Herron complained about racism to Defendant, even going so far as to request a meeting so that he and Supervisor Tony Lolo could work out their differences and/or come to an understating.

34. Plaintiff Percy Herron's employment was terminated under circumstances making it more plausible than not that the termination of his employment was in violation of Title VII, including but not necessarily limited to: The fact that Percy Herron had complained about

6

the disparate treatment he had faced in his workplace; the finding of other work for non-African American employees and employees with less seniority; the fact that Mr. Herron was subject to increased scrutiny, while other, non-African American employees with similar or egregious infractions were not subject to similar scrutiny; and/or other employees who had not complained regarding racism, were not subject to similar scrutiny and ultimately termination.

35. As a result of the actions by Defendants in violation of the Michigan Civil Rights Act, Percy Herron sustained damages including, but not necessarily limited to, being subject to heightened scrutiny, loss of reputation, loss of back wages, loss of front wages, loss of opportunity for advancement and/or promotion, emotional distress, embarrassment, humiliation, exemplary damages, etc.

WHEREFORE Plaintiff Percy Herron respectfully requests this Honorable Court award him all damages allowed under Title VII including, but not necessarily limited to, economic damages, loss of back pay, loss of future pay, loss of benefits, non-economic damages, damages for loss of reputation, damages for embarrassment, humiliation and/or emotional distress; consequential damages, incidental damages, exemplary damages, punitive damages, costs, interest, and attorney's fees.

### COUNT III
### VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
### 29 U.S.C. §623

36. Plaintiff Percy Herron reincorporates and re-alleges the above paragraphs as though fully stated herein.

37. Plaintiff Percy Herron is in a protected category being over 40 years of age.

38. Plaintiff began his employment with the Defendant on or around October 2014. He originally turned down the job with Defendant because the job was not on first shift.

7

39. On or about February 2016 Plaintiff Percy Herron was moved to third shift without warning or explanation, against his wishes, while other, younger employees with less seniority were allowed to remain on first shift.

40. On or about December 1, 2016, Peterson Spring eliminated the third shift.

41. Upon elimination of the third shift, Peterson Spring found alternate positions for many of the former third-shift workers.

42. Plaintiff Percy Herron's employment was terminated at the time of this elimination, where other, non-African American employees with less seniority and younger employees with less seniority were found other shifts to work.

43. As a result of Defendant's actions, Plaintiff Percy Herron sustained damages, including economic damages and non-economic damages.

44. Defendant's conduct was willful.

45. Plaintiff Percy Herron's employment was terminated under circumstances making it more plausible than not that the termination of his employment was in violation of the Age Discrimination in Employment Act 29 U.S.C. §623, including but not necessarily limited to: The fact that Peterson Spring found other work for younger employees with less seniority; the fact that Mr. Herron was subject to increased scrutiny, while other, younger employees with similar or egregious infractions were not subject to similar scrutiny.

WHEREFORE Plaintiff Percy Herron respectfully requests this Honorable Court award him all damages allowed under the Age Discrimination in Employment Act 29 U.S.C. §623, including, but not necessarily limited to, economic damages, loss of back pay, loss of future pay, loss of benefits, non-economic damages, damages for loss of reputation, damages for embarrassment, humiliation and/or emotional distress; consequential damages, incidental damages, exemplary damages, punitive damages, costs, interest, and attorney's fees.

## COUNT IV
## VIOLATION OF ELLIOT-LARSEN MICHIGAN CIVIL RIGHTS ACT
## BASED ON AGE

46. Plaintiff Percy Herron reincorporates and re-alleges the above paragraphs as though fully stated herein.

47. Plaintiff Percy Herron is in a protected category being over 40 years of age.

48. Plaintiff began his employment with the Defendant on or around October 2014. He originally turned down the job with Defendant because the job was not on first shift.

49. On or about February 2016 Plaintiff Percy Herron was moved to third shift without warning or explanation, against his wishes, while other, younger employees with less seniority were allowed to remain on first shift.

50. On or about December 1, 2016, Peterson Spring eliminated the third shift.

51. Upon elimination of the third shift, Peterson Spring found alternate positions for many of the former third-shift workers.

52. Plaintiff Percy Herron's employment was terminated at the time of this elimination, where other, non-African American employees with less seniority and younger employees with less seniority were found other shifts to work.

53. As a result of Defendant's actions, Plaintiff Percy Herron sustained damages, including economic damages and non-economic damages.

54. Defendant's conduct was willful.

55. Plaintiff Percy Herron's employment was terminated under circumstances making it more plausible than not that the termination of his employment was in violation of the Elliot-Larsen Michigan Civil Rights Act, including but not necessarily limited to: The fact that Peterson Spring found other work for younger employees with less seniority; the fact that

9

Mr. Herron was subject to increased scrutiny, while other, younger employees with similar or egregious infractions were not subject to similar scrutiny.

WHEREFORE Plaintiff Percy Herron respectfully requests this Honorable Court award him all damages allowed under the Elliot-Larsen Michigan Civil Rights Act, including, but not necessarily limited to, economic damages, loss of back pay, loss of future pay, loss of benefits, non-economic damages, damages for loss of reputation, damages for embarrassment, humiliation and/or emotional distress; consequential damages, incidental damages, exemplary damages, punitive damages, costs, interest, and attorney's fees.

Respectfully submitted,
THE CORTESE LAW FIRM, PLC

/s/Nanette L. Cortese
Nanette L. Cortese (P-43049)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI  48025
(248) 593-6933/fax (248) 593-7933
ncortese@thecorteselawfirm.com

Dated: May 30, 2017

10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MIGHICAN
SOUTHERN DIVISION

PERCY HERRON,

      Plaintiff,

v.                                                   Case No:  17-_____
                                                     HON.

PETERSON AMERICAN CORPORATION,
d/b/a
PETERSON SPRING COMPANY

      Defendant.

THE CORTESE LAW FIRM, PLC
Nanette L. Cortese (P43049)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, Michigan 48025
(248) 593-6933/fax (248) 593-7933
ncortese@thecorteselawfirm.com

## JURY DEMAND

NOW COMES Plaintiff, Percy Herron by and through his attorneys, The Cortese Law Firm,

PLC, and hereby respectfully demands a trial by jury on all issues allowed by law.

                    Respectfully submitted,
                    THE CORTESE LAW FIRM, PLC

                    /s/Nanette L. Cortese_____
                    Nanette L. Cortese (P-43049)
                    Attorney for Plaintiff
                    30200 Telegraph Road, Suite 400
                    Bingham Farms, MI  48025
                    (248) 593-6933/fax (248) 593-7933
                    ncortese@thecorteselawfirm.com

Dated: May 30, 2017